UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCIO DAVILA,<br><br>                                Plaintiff,<br><br>v.<br><br>ERIC S. COHAN; STEPHANIE SYPTAK-RAMNATH; and ANTONY BLINKEN,<br><br>                                Defendants. | Case No.:  23-CV-1532 JLS (BLM)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 4) |

Presently before the Court is a Motion to Dismiss ("Mot.," ECF No. 4) filed by Defendants Eric S. Cohan, Stephanie Syptak-Ramnath, and Antony Blinken (collectively, "Defendants").  Plaintiff Rocio Davila filed an Opposition to the Motion ("Opp'n," ECF No. 5), and Defendants filed a Reply ("Reply," ECF No. 7).[1]  The Court took the matter under submission without oral argument on November 16, 2023.  *See* ECF No. 6.  Having carefully considered the Parties' submissions and the applicable law, the Court **GRANTS** Defendants' Motion.

/ / /

---

[1] All citations to the Opposition refer to the page numbers stamped to the upper right corner of the document in the Court's Case Management/Electronic Case Filing software.

# BACKGROUND

Per the Complaint ("Compl.," ECF No. 1), Plaintiff—a United States citizen—filed an I-130 visa petition with the United States Citizenship and Immigration Service ("USCIS") on behalf of her husband in February 2021.  *See* Compl. ¶¶ 1–2, 12.  Plaintiff seeks to obtain lawful permanent resident status for her husband so that he can join her in the United States.  *Id.* ¶ 18.  Plaintiff alleges that her current inability to live with her husband in the United States causes her "significant personal, financial, and emotional hardship." *Id.* ¶ 5.  Specifically, Plaintiff alleges the separation requires her to care for her child on her own, which has forced her to forgo her plans to enroll in college.  *Id.* ¶¶ 6–8.  She also alleges that the separation—and its associated childcare burdens—causes her extreme anxiety and depression and prevents her from planning for her future with any certainty.  *Id.*  Finally, because her husband has been unemployed, Plaintiff is the sole source of financial support for herself, her child, and her husband.  *Id.*

UCSIS approved Plaintiff's petition in August 2021.  *Id.* ¶ 17.  Plaintiff's husband then submitted a visa application and, in April 2023, completed an interview at the United States Consulate General in Ciudad Juarez.  *See id.* ¶ 19.  After the interview, consular officers informed Plaintiff's husband that his application had been placed in administrative processing so that consulate officers could "gather additional information."  *See id.* ¶ 21.

Plaintiff commenced the instant action approximately four months later, seeking to compel Defendants—sued in their official capacity as consular officers and officers of the United States Department of State—to issue a final decision on her husband's application.  *See generally id.*  Plaintiff brings three causes of action.  First, Plaintiff brings a claim under 5 U.S.C. § 706(1), a provision of the federal Administrative Procedure Act ("APA") that, in relevant part, allows courts to compel "unreasonably delayed" agency action.  *See* 5 U.S.C. § 706(1); Compl. ¶¶ 23–27.  Second, Plaintiff brings a claim under 28 U.S.C. § 1361 (the "Mandamus Act"), which allows a district court to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  *See* 28 U.S.C. § 1361; Compl. ¶¶ 28–34.  Finally, Plaintiff alleges that consular

officers' delay in reaching a final decision on her husband's visa application violates her "substantive and procedural due process rights protected by the Fifth Amendment of the Constitution." *Id.* ¶¶ 35–39.

Defendants filed the instant Motion on October 23, 2023, arguing that the Court should dismiss Plaintiff's mandamus claim pursuant to Federal Rule of Civil Procedure 12(b)(1) and Plaintiff's APA and due process claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  *See generally* Mot.

## LEGAL STANDARDS

### I.   Federal Rule of Civil Procedure 12(b)(1)

Federal courts are courts of limited jurisdiction and thus have an obligation to dismiss claims for which they lack subject-matter jurisdiction. *Demarest v. United States*, 718 F.2d 964, 965–66 (9th Cir. 1983).   The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Under Federal Rule of Civil Procedure 12(b)(1), a party may raise by motion the defense that the complaint lacks subject-matter jurisdiction and may do so via a facial or factual attack. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  A court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient . . . to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

In a factual attack, on the other hand, "the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039.  In such challenges, courts (1) "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment,"

and (2) "need not presume the truthfulness of the plaintiff's allegations." *Id.* After the moving party evidences the lack of subject-matter jurisdiction, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

Dismissal under Rule 12(b)(1) is warranted "where the alleged claim under the [C]onstitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous." *Safe Air*, 373 F.3d at 1039 (internal quotation marks omitted) (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946)). But dismissal under 12(b)(1) is not appropriate when "'the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of an action." *Sun Valley Gasoline, Inc. v. Ernst Enters., Inc.*, 711 F.2d 138, 139 (9th Cir. 1983) (quoting *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983)).

## II. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." A court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)).

/ / /

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" do not demonstrate a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).

Review under Rule 8(a) requires a context-specific analysis involving a court's "judicial experience and common sense." *Id.* at 679.  A court must "accept[] all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012).  That said, the Court need not accept as true "legal conclusions" contained in the complaint. *Iqbal*, 556 U.S. at 678.

If a complaint does not state a plausible claim for relief, a court should grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

## DISCUSSION

The Court will first address Plaintiff's claims under the Mandamus Act and APA. Then, the Court will turn to Plaintiff's claims under the Due Process Clause of the Fifth Amendment.

/ / /

/ / /

## I.      Mandamus and APA Claims

To compel governmental action under the Mandamus Act, a court must find that "(1) the plaintiff's claim is clear and certain; (2) the duty is 'ministerial and so plainly prescribed as to be free from doubt'; and (3) no other adequate remedy is available."  *Or. Nat. Res. Council v. Harrell*, 52 F.3d 1499, 1508 (9th Cir. 1995) (internal quotation marks omitted) (quoting *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986)).  Relatedly, "a court may compel [delayed] agency action under the APA when the agency (1) has 'a clear, certain, and mandatory duty' and (2) has unreasonably delayed in performing such duty."  *Vaz v. Neal*, 33 F.4th 1131, 1136 (9th Cir. 2022) (citations omitted) (quoting *Plaskett v. Wormuth*, 18 F.4th 1072, 1082 (9th Cir. 2021)).

The Ninth Circuit has recognized that the relief sought under the Mandamus Act and under § 706(1) of the APA is "essentially the same."  *Indep. Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997).  So, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [a court] may elect to analyze the APA claim only."  *Vaz*, 33 F.4th at 1135.

Here, the APA offers the exact remedy Plaintiff seeks under the Mandamus Act—the compulsion of unreasonably delayed agency action.  *See* 5 U.S.C. § 706(1); Compl. ¶¶ 32–33 (seeking to compel Defendant, through mandamus, to "adjudicate [her] husband's visa application within a reasonable time" as required by the APA).  The Court will thus analyze Plaintiff's APA claim only.  *See Shahijani v. Laitinen*, No. 223CV03967RGKMRW, 2023 WL 6889774, at *2 (C.D. Cal. Oct. 6, 2023) ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only.").  If Plaintiff's APA claim fails, Plaintiff's claim under the Mandamus Act fails as well.  *See Vaz*, 33 F.4th at 1138–39.

The Court has subject matter jurisdiction over Plaintiff's APA claims pursuant to 28 U.S.C. § 1331.  *See id.* ("[The plaintiff] alleges that he is entitled to relief under the APA, a federal statute, because the [agency] failed to perform its duties under federal regulations within a reasonable time.  [The plaintiff's] APA claim therefore arises under

the laws of the United States, and the district court had subject matter jurisdiction."). The Court will thus proceed to evaluate whether Plaintiff has stated a plausible claim for relief under the APA pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Plaskett*, 18 F.4th at 1082 ("Any deficiencies as to the APA claim go to the merits of that cause of action rather than to the subject matter jurisdiction of the court to consider it.").[2]

### A.    Mandatory Duty

Plaintiff argues that 8 U.S.C. § 1202(b) creates a non-discretionary duty to adjudicate visa applications to finality. *See* 8 U.S.C. § 1202(b) (stating, in relevant part, part, that "[a]ll immigrant visa applications shall be reviewed and adjudicated by a consular officer").    Many courts have agreed.    *See, e.g.*, *Kassem v. Blinken*, No. 121CV01400DADHBK, 2021 WL 4356052, at *5 (E.D. Cal. Sept. 24, 2021) ("As many other district courts have found, 8 U.S.C. § 1202(b) 'imposes a mandatory duty on consular officers to review and adjudicate immigrant visa applications.'" (quoting *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. 2021))); *Iqbal v. Blinken*, No. 223CV01299KJMKJN, 2023 WL 7418353, at *6 (E.D. Cal. Nov. 9, 2023).    Other courts, however, have declined to read 8 U.S.C. § 1202(b) in this manner. *See, e.g.*, *Mueller v. Blinken*, No. 4:23-CV-24, 2023 WL 4759245, at *2–4 (E.D. Va. July 17, 2023).

Still other courts have found a mandatory duty to adjudicate visa applications to finality under 22 C.F.R. § 42.81(a), which states:

> When a visa application has been properly completed and executed before a consular officer in accordance with the provisions of the [Immigration and Nationality Act ("INA")] and the implementing regulations, the consular officer must issue the visa, refuse the visa under INA 212(a) or 221(g) or other

---

[2] Defendants include alongside their Motion a document and a declaration from a government employee. The Court, however, "may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6)" unless said materials are incorporated by reference into the complaint or are subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). Moreover, as the Court need not—and does not—consider either document to determine whether Plaintiff has stated a claim under the APA, the Court denies Defendants' implied request for it to consider either the document or the declaration. For the same reason, the Court declines to take judicial notice of the government websites cited in Defendants' Motion or in Plaintiff's Opposition.

> applicable law or, pursuant to an outstanding order under INA 243(d), discontinue granting the visa.

22 C.F.R. § 42.81(a); *see also Shahijani*, 2023 WL 6889774, at *3; *Patel v. Reno*, 134 F.3d 929, 932 (9th Cir. 1997) (concluding that an alleged "refusal" pursuant to 22 C.F.R. § 42.81(a) did not satisfy the defendants' nondiscretionary duty under said regulation because it was "not a final decision").  This approach also has its detractors, though. *Svensborn v. Keisler*, No. C07-5003 TEH, 2007 WL 3342751, at *4 (N.D. Cal. Nov. 7, 2007); *but see Vulupala v. Barr*, 438 F. Supp. 3d 93, 98–99 (D.D.C. 2020); *Gonzalez v. Baran*, No. 221CV05902CASASX, 2022 WL 1843148, at *3 (C.D. Cal. Jan. 11, 2022).

Defendants argue the consular officer's placement of the visa application into administrative processing satisfied any mandatory duty imposed by 22 C.F.R. § 42.81(a). Reply at 1–2.  But Defendants nowhere contend either (1) that they otherwise lack a mandatory duty to issue a final decision regarding a visa application or (2) that they have reached a final decision on the visa application.  Instead, Defendants appear to concede their duty to process visa applications to finality in their Motion, as they argue only that there is a "lack of any statutory or regulatory provisions that require consular processing *within a certain amount of time*."  Mot. at 7 (emphasis added).  Moreover, Defendants state explicitly that they are "not asserting the doctrine of consular nonreviewability," Reply at 1, which bars judicial review of final visa decisions in most circumstances, *see Patel*, 134 F.3d at 931–33.

Defendants' apparent concession aside, the Court need not resolve here the issue of whether Defendants are subject to a mandatory duty to adjudicate visa applications to finality.  As explained below, even assuming the existence of such a duty, Plaintiff has not plausibly alleged unreasonable delay.

### B.    Unreasonable Delay

Defendants argue—and Plaintiff concedes—that consular officers are not subject to a mandatory statutory deadline by which a visa application must be processed.  *See* Mot. at 7; Opp'n at 17.  Instead, the Parties dispute whether Defendants have satisfied 5 U.S.C.

§ 555, which requires an agency to "within a reasonable time . . . conclude a matter presented to it." 5 U.S.C. § 555(b); *see also Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 420 (S.D.N.Y. 2006) (noting that § 555(b) applies to visa adjudications conducted by the Department of State). To determine whether an agency has performed its duty within a reasonable time, the Ninth Circuit "use[s] the *TRAC factors—* the six-factor balancing test announced in *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 79–80 (D.C. Cir. 1984) ("*TRAC*")." *Vaz*, 33 F.4th at 1137. These factors include:

> (1) the time agencies take to make decisions must be governed by a "rule of reason[";]
> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
> (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* (alterations in original) (quoting *TRAC*, 750 F.2d at 80). Though the first factor is "[t]he most important[,] . . . it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). A Court should compel action under the *TRAC* factors only when the agency's failure to respond is "so egregious" as to warrant relief. *TRAC*, 750 F.2d at 79.

Some courts have recognized that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (internal quotation marks omitted) (quoting *Gonzalez v.*

*Cuccinelli*, 985 F.3d 357, 375 (4th Cir 2021)).  For this reason, Plaintiff urges the Court to reserve application of the *TRAC* factors until Plaintiff has had the opportunity for discovery.  *See* Opp'n at 20.  Though the *TRAC* test is fact-dependent, numerous courts in and outside of the Ninth Circuit have nevertheless required plaintiffs in visa-application cases to plausibly allege unreasonable delay under the *TRAC* factors to survive a motion to dismiss.  *See, e.g.*, *Shahijani*, 2023 WL 6889774, at *3; *Sarlak v. Pompeo*, No. CV 20-35 (BAH), 2020 WL 3082018, at *5 (D.D.C. June 10, 2020); *Nusrat v. Blinken*, No. CV 21-2801 (TJK), 2022 WL 4103860, at *5 (D.D.C. Sept. 8, 2022).

Accordingly, the Court will proceed to evaluate the *TRAC* factors based on the allegations in Plaintiff's Complaint.  When assessing unreasonable delay in the context of visa applications, courts often consider factors three and five together, as both factors focus on the nature and type of harm suffered by the plaintiff.  *See, e.g.*, *Didban v. Pompeo*, 435 F. Supp. 3d 168, 177 (D.D.C. 2020).  Accordingly, the Court will address factor three alongside factor five.

### 1.    Factor One: Rule of Reason

"In the context of an immigration visa application, the first factor requires courts to consider both the length of the delay and the reasons for the delay."  *Shahijani*, 2023 WL 6889774, at *3; *see also Ctr. for Sci. in the Pub. Int. v. U.S. Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (noting that the first factor examines whether the agency's response time is "governed by an identifiable rationale"); *Vaz*, 33 F.4th at 1138 (considering the length of the delay when evaluating the first factor).  As noted in *Tate v. Pompeo*,

> Whether a "rule of reason" exists for agency action "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency."

/ / /

513 F. Supp. 3d 132, 148 (D.D.C. 2021) (alteration in original) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003)).

The Court begins with the reasons behind the delay.  The Complaint alleges that "[a]dministrative processing is a temporary measure that signals that processing is ongoing while allowing the . . . Department of State *to gather additional information*."  Compl. ¶ 21 (emphasis added).  Consistent with this allegation, Plaintiff's Opposition indicates that the consular officer has requested additional information from Plaintiff's spouse since the interview.  *See* Opp'n at 17.  This is not a case, therefore, where there is no identifiable rationale behind Defendants' delay; the Department appears to have needed additional information to reach a decision.  Moreover, as the decision to grant a visa frequently implicates "'relations with foreign powers[]' or involve[s] 'classifications defined in light of changing political and economic circumstances,'" *Didban*, 435 F. Supp. 3d at 176 (internal quotation marks omitted) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2423 (2018)), the Court recognizes that making a final determination on a visa application implicates complex matters that fall outside of courts' typical expertise, *see Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828, at *4 (N.D. Cal. June 28, 2012) (noting that courts consider the complexity of the agency investigation when determining whether a delay is reasonable).  Given the complex, sensitive nature of the visa determination, a delay to gather additional information is not facially unreasonable.

The Court next considers the length of the delay and turns to precedent as a guide. *See Sarlak*, 2020 WL 3082018, at *6 (comparing the delay asserted by the plaintiff with delays considered reasonable by courts evaluating similar situations).  Courts considering claims of unreasonable delay with respect to post-interview administrative processing have found that delays of similar duration to the instant case are "not unreasonable" at the motion-to-dismiss stage.  *Shahijani*, 2023 WL 6889774, at *4 (analyzing eight-month post-interview delay); *see also Assadian v. Oudkirk*, No. 322CV00921RBMBGS, 2023 WL 6237976, at *1 (S.D. Cal. Sept. 25, 2023) (analyzing eleven-week delay between the placement of the applications in administrative processing and the filing of the complaint

and approximately five-month delay before the court's decision).  And other courts have deemed much longer delays reasonable.  *See Yavari v. Pompeo*, No. 2:19-CV-02524-SVW-JC, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019) (noting immigration delays in excess of five, six, or seven years are generally found unreasonable, those between three and five years are often found reasonable, and that delay of "slightly more than a year is drastically short of what constitutes an unreasonable delay"); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) ("In this district, courts have generally found delays of four years or less not to be unreasonable.").

Here, Plaintiff filed her Complaint approximately four months after her husband's application was placed in administrative processing, and this case has now been pending for approximately six months.  This approximately ten-month administrative-processing-related delay is comparable to those considered insufficient to state a plausible claim for relief in *Shahijani* and *Assadian.   Accord Nusrat*, 2022 WL 4103860, at *6 & n.6 (explaining that courts generally measure the period of delay from the last government action to the issuance of the opinion, considering delay from the date at which administrative processing began, and dismissing claim for unreasonable delay where the visa application remained in administrative processing for 29 months).  Moreover, Plaintiff filed the petition on behalf of her husband approximately three years ago, s*ee* Compl. ¶ 2, which still falls within the time range generally considered reasonable by courts.  *See Yavari*, 2019 WL 6720995, at *8; *Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021).

As the source of the delay does not appear, from Plaintiff's Complaint, to lack reason, and the alleged delay in Plaintiff's case is within the range of delay considered reasonable by courts in visa-application cases, the first *TRAC* factor weighs strongly in Defendants' favor.

### 2.   Factor Two: Congressional Timetable or Indication of Speed

The second *TRAC* factor asks whether Congress has provided "a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute."

*TRAC*, 750 F.2d at 80.  Plaintiff argues this factor favors her, as 8 U.S.C. § 1571(b) states: "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ."

"True, Congress could have said nothing, and that they did not helps" Plaintiff, but only "slightly." *Nusrat*, 2022 WL 4103860, at *6.  Because the Ninth Circuit has held that similar "sense of Congress" language is "non-binding, legislative dicta," *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 961–62 (9th Cir. 1999), multiple courts have refused to weigh the second *TRAC* factor in favor of visa applicants based on § 1571(b).  *See, e.g.*, *Shahijani*, 2023 WL 6889774, at *4; *Ortiz v. U.S. Dep't of State*, No. 1:22-CV-00508-AKB, 2023 WL 4407569, at *7 (D. Idaho July 7, 2023).  Other courts have questioned whether § 1571 applies to processing by consular officers at all, instead suggesting that it applies only to processing by USCIS.  *See, e.g.*, *Arab v. Blinken*, 600 F. Supp. 3d 59, 69–70 (D.D.C. 2022); *Borzouei v. Bitter*, No. 22-CV-872-MMA (KSC), 2022 WL 17682659, at *5 n.8 (S.D. Cal. Dec. 14, 2022).  And still other courts have recognized that "Congress has given the agencies wide discretion in the area of immigration processing," *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153–54 (D.D.C. 2017), which counsels further against assigning to § 1571(b) the weight Plaintiff suggests.  Thus, factor two weighs only slightly, if at all, in favor of Plaintiff.  *See Ortiz*, 2023 WL 4407569, at *7 (noting "a contrary conclusion would ignore 'the overwhelming caselaw rejecting unreasonable delay challenges for applications pending well beyond the 180-day window that Congress contemplated in 8 U.S.C. § 1571(b).'" (quoting *Mohammad v. Blinken*, 548 F. Supp. 3d 159, 167 (D.D.C. 2021))).[3]

### 3.   *Factor Four: Effect on Competing Priorities*

Factor four—whether compelling the agency to act would detract from its higher or competing priorities—also weighs strongly in Defendants' favor.  In *Vaz*, the Ninth Circuit

---

[3] Plaintiff's Opposition also asks the Court to consider an alleged "cable" transmitted to consular posts by Congress, which "set a goal" for consular posts to process certain visa applications within thirty or sixty days.  Opp'n at 25.  Setting aside this Court's inability to verify the existence of said cable, *TRAC* factor two directs the Court to consider indications set forth by "statute," *see TRAC*, 750 F.2d at 80, not isolated communications purportedly sent by government bodies.

affirmed summary judgment over a plaintiff's claim of unreasonable delay with respect to an Executive Office for Immigration Review ("EOIR") investigation, reasoning that

> The EOIR has limited resources and has hundreds of pending complaints, many of which were received before [the plaintiff] filed his complaint and presumably some of which the EOIR has determined merit priority. Requiring the EOIR to investigate [the plaintiff]'s complaint would interfere with the EOIR's discretion in prioritizing its activities and allocating its resources.

33 F.4th at 1138. In so holding, the Ninth Circuit cited *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75–76 (D.C. Cir. 1991), in which the D.C. Circuit denied relief under the *TRAC* factors, even though other factors favored relief, when ordering relief would place the petitioner at the head of a queue of agency adjudications while producing no net gain.

In numerous cases involving visa applications, courts have applied *In re Barr Laby's* and concluded that the fourth TRAC factor weighs strongly in favor of the government at the 12(b)(6) stage. *See, e.g.*, *Skalka*, 246 F. Supp. 3d at 154 (concluding processing of visa applications is "the very type of agency action . . . that if compelled would presumably delay other adjudications"); *Ghadami v. U.S. Dep't of Homeland Sec.*, No. CV 19-00397 (ABJ), 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020); *Nusrat*, 2022 WL 4103860, at *7. So too where plaintiffs have alleged post-interview delay related to administrative processing. *Shahijani*, 2023 WL 6889774, at *5 (concluding expediting one person's administrative processing would negatively impact the processing of other similarly situated noncitizens); *Assadian*, 2023 WL 6237976, at *8 (noting expediting the administrative processing of the applications of the plaintiff's parents would "necessarily put them ahead of others without justification"); *see also Zagnoon v. Blinken*, No. 23-CV-629-WMC, 2023 WL 7279295, at *4 (W.D. Wis. Nov. 3, 2023) (denying a request for a preliminary injunction because "[g]iven the backlog in visa processing, granting relief to plaintiffs would likely 'reorder a queue' of visa applicants in administrative processing who also all want final adjudication" (quoting *Tate*, 513 F. Supp. 3d at 149)).

/ / /

14

The Court agrees with the reasoning of these courts and finds that factor four strongly favors Defendant.  Plaintiff's Complaint contains no allegations suggesting that post-interview administrative processing is an isolated occurrence, and reason suggests that many applicants other than Plaintiff's spouse are similarly awaiting the finalization of their visa applications.  The Court thus concludes that prioritizing the administrative processing of the application of Plaintiff's spouse would merely bump Plaintiff up in the queue of other applicants.

4.      *Factors Three and Five: Nature of Interest Prejudiced by Delay and Whether Health and Human Welfare Are at Stake.*

The Complaint makes clear that health and human welfare are at stake, as Plaintiff and her husband have been "suffering from anxiety and depression" due to their separation.  Compl. ¶ 6.   Moreover, Plaintiff's interest in ending the separation of her family is "undeniably significant."  *See Didban*, 435 F. Supp. 3d at 177.  The Court is sympathetic to the experience of Plaintiff and her family and recognizes that factors three and five weigh in Plaintiff's favor.

That said, the Court also acknowledges that "'many others' face similarly difficult circumstances as they await adjudication of their visa applications," and that expediting processing of Plaintiff's application would move Plaintiff in front of others "who may be facing similar (or even more dire) circumstances."  *Tesfaye v. Blinken*, No. CV 22-411 (CKK), 2022 WL 4534863, at *8 (D.D.C. Sept. 28, 2022) (internal quotation marks omitted) (quoting *Mohammad*, 548 F. Supp. 3d at 168–69).  As Defendants must allocate their resources across numerous applications that also necessarily implicate health and human welfare, these factors receive reduced weight.  *See id.* at *9.

5.      *Factor Six: Agency Impropriety*

The sixth factor—which concerns impropriety by the agency—is neutral.  As *TRAC* emphasized that Plaintiff need not assert impropriety to prevail, the absence of impropriety does not weigh against Plaintiff.  *TRAC*, 750 F.2d at 80.  But neither does the sixth factor weigh in Plaintiff's favor, as Plaintiff's Complaint contains no allegations raising a

reasonable inference of impropriety.  Plaintiff argues that if discovery proceeds, she may be able to uncover evidence of impropriety.  *See* Opp'n at 27.  That argument, however, ignores Plaintiff's burden to state a plausible claim for relief before reaching discovery.

In sum, based on Plaintiff's allegations, the Court finds that Plaintiff has not plausibly alleged unreasonable delay regarding the administrative processing of her spouse's visa application.  The length of the alleged delay has not yet approached that of delays considered unreasonable by courts, Plaintiff's allegations do not suggest that the delay lacks reason, and granting Plaintiff's requested relief would both infringe on Defendants' ability to prioritize their resources and affect the processing of other applicants.  At this stage, these considerations outweigh the harm to Plaintiff's interests that have stemmed from the delay.  Accordingly, the Court **DISMISSES** Plaintiff's claims under the APA and Mandamus Act.

## II.  Due Process

The Complaint alleges violations of procedural and substantive due process.  Neither theory is sufficient.

First, procedural due process.  Plaintiff argues that she has a statutorily created right—based in 8 U.S.C. § 1202(b), 5 U.S.C. § 555(b), and 5 U.S.C. § 706(1)—to the final adjudication of her spouse's visa application within a reasonable time, and that the administrative-processing-related delay has deprived her of this right without due process of law.  *See* Opp'n at 27–28.  The "process" that Plaintiff alleges she has been denied is a final decision on her spouse's application.  *Id.*  Plaintiff—who is represented by counsel—cites no case to support this argument.

Setting aside other potential flaws, the Court has already determined above that Plaintiff has not plausibly alleged unreasonable delay in the processing of her spouse's visa application.  Thus, even if Plaintiff is correct that she has a statutorily created liberty or property interest in receiving a decision on her spouse's visa application within a reasonable time, Plaintiff has not plausibly alleged a deprivation of that interest.  *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of

procedural due process apply only to the *deprivation* of interests encompassed by the Fourteenth Amendment's protection of liberty and property." (emphasis added)). Therefore, Plaintiff's procedural due process claim fails.[4]

Regarding substantive due process, Plaintiff argues she has an implied fundamental right to "family unity." Opp'n at 28 (first citing *Roth*, 408 U.S. at 564; and then citing *Obergefell v. Hodges*, 576 U.S. 644, 655 (2015)). But neither case bears on delay in immigration processing, and Plaintiff stops there. She offers no argument justifying her claim to a fundamental right to have her spouse's visa application adjudicated at a faster pace, and the Court will not manufacture Plaintiff's arguments for her. And that problem aside, "no court has recognized that a citizen spouse has a constitutional right to have his or her alien spouse reside in the United States." *Bakran v. Sec'y*, 894 F.3d 557, 565 (3d Cir. 2018).

As both of Plaintiff's due-process theories prove unsupported, the Court **DISMISSES** Plaintiff's claim under the Due Process Clause of the Fifth Amendment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (ECF No. 4). As the Court concludes that no amendment consistent with Plaintiff's Complaint would change the Court's conclusion at this time, the Court **DISMISSES** all of

/ / /

/ / /

/ / /

---

[4] The Ninth Circuit has recognized that citizens have a constitutionally derived liberty interest in their spouse's visa application such that when said visa application is *denied*, the citizen is entitled to a "facially legitimate and bona fide reason" for the denial under procedural due process. *Cardenas v. United States*, 826 F.3d 1164, 1169–72 (9th Cir. 2016); *see also Munoz v. U.S. Dep't of State*, 50 F.4th 906, 915–16 (9th Cir. 2022), *cert. granted in part*, No. 23-334, 2024 WL 133818 (U.S. Jan. 12, 2024). As neither Plaintiff's Complaint nor her Opposition make any reference to *Cardenas* or *Munoz*, the Court concludes that Plaintiff has waived any argument regarding their application here. Moreover, as Plaintiff expressly argues that Defendants have not yet denied the visa application of her spouse, *see* Opp'n at 12–13, said cases' relevance to Plaintiff's case is uncertain.

Plaintiff's claims **WITHOUT LEAVE TO AMEND**. *See Shahijani*, 2023 WL 6889774, at *5. This dismissal, however, is **WITHOUT PREJUDICE** to refiling should later circumstances demonstrate an unreasonable delay. *See id.*

   **IT IS SO ORDERED.**

Dated:  February 20, 2024

Hon. Janis L. Sammartino
United States District Judge

23-CV-1532 JLS (BLM)